# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH REYNOLDS,

       Plaintiff-Appellant,

v

ROBERT HASBANY MD PLLC and ROBERT
HASBANY, MD,

       Defendant-Appellees.

FOR PUBLICATION
March 20, 2018
9:00 a.m.

No. 336933
Oakland Circuit Court
LC No. 2016-155257-CZ

Before: M. J. KELLY, P.J., and JANSEN and METER JJ.

PER CURIAM.

Plaintiff, Deborah Reynolds, appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(4) (lack of subject matter jurisdiction) in favor of defendants, Robert Hasbany, MD, PLLC, and Robert Hasbany, MD. Because the circuit court has exclusive jurisdiction under claims brought pursuant to the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., we reverse.

## I. BASIC FACTS

Reynolds filed a complaint alleging that defendants had violated ELCRA by discriminating against her based on her weight and by retaliating against her for engaging in protected activity related to her weight. Reynolds alleged that she worked for defendants from 2010 through 2012, during which time she lost 60 pounds. When she returned to work for defendants in 2015, she had gained most of that weight back. Reynolds alleged that Hasbany commented on the gain and told her that she had to lose the weight again. Reynolds asserted that, throughout her employment with defendants, Hasbany "regularly harassed his female employees about their weight." By way of example, Reynolds asserted that Hasbany told female employees, including Reynolds, "you gotta lose this weight," "I'm sick and tired of these fat/big/overweight people," "overweight people don't produce as much in the workplace," and "you guys need to take the weight off." She alleged that Hasbany regularly required his female employees to weigh themselves in his office and then report the results to him.

Reynolds alleged that, on August 12, 2016, she arrived at work and was told by defendants' office manager that Hasbany wanted her to weigh herself and meet him in his office. Reynolds expressed frustration at the demand and stated that she told the office manager "No, I'm not doing this today." Reynolds was allegedly advised that if she did not, she would be sent

-1-

home and if she went home she could not return to work without a "doctor's note." According to Reynolds, she went to Hasbany's office and directly told him that she was not going to weigh herself, to which Hasbany responded "you either weigh in, or you get a doctor's note." Reynolds objected, noting that she could not get a doctor's note because she lacked insurance; she was also unsure about what she was supposed to get a doctor's note for because she was not sick. When Hasbany insisted that she either weigh in or get a doctor's note, Reynolds responded, "then I take it you're firing me." Reynolds then left Hasbany's office, telling her co-workers that she guessed she was fired because she did not want to weigh herself."

On October 25, 2016, about a month after Reynolds filed her complaint, defendant's lawyer sent the following "unconditional return to work letter" to Reynolds's lawyer:

> Please consider this e-mail a formal, unconditional offer to your client to return to work. She would be returning to her same position, same rate of pay, and same work hours. To accept this offer, you must notify me of your acceptance in writing (e-mail will do) by Tuesday, Nov. 1, 2016 by 5:00 p.m., and your client must return to work at 8:30 a.m. on Monday, November 7, 2016.

Reynolds's lawyer sent the following reply on October 31, 2016:

> I have conveyed your offer to my client, and she is understandably rejecting it. Given the circumstances of her prior employment with Dr. Hasbany, and the fact that a return to work would require that she work closely with Dr. Hasbany and potentially again endure his discriminatory, harassing and abusive conduct, it is not reasonable that she return to her former employment.

Thereafter, on November 2, 2016, defendants moved for summary disposition under MCR 2.116(C)(4), arguing that, even if Reynolds prevailed on her ELCRA claim, her maximum recovery would be $5,280,[1] which, under MCL 600.8301(1), places her claim within the exclusive jurisdiction of the district court, not the circuit court. In response, Reynolds asserted that the circuit court has exclusive jurisdiction over civil rights claims regardless of the amount in controversy. After oral argument, the circuit court held:

---

[1] To support the argument that Reynolds could only receive a maximum recovery of $5,280, defendants argued that in a civil rights action, a plaintiff is required to mitigate damages and that an unconditional offer to return to work cuts off damages on the right to "front pay." Defendants contend that the October 25 return to work letter constituted an unconditional offer to return to work, which meant that as a matter of law, Reynolds's damages were limited by her refusal of the offer. In response, Reynolds asserted that the letter was not an unconditional offer and that, even if it was, there remained a question of fact with regard to whether her rejection of the offer was reasonable. We do not address this argument on appeal. See note 6, *infra*.

From the allegations of the complaint, it appears to a legal certainty that the amount in controversy is not greater than the applicable jurisdictional limit of the Circuit Court. [Reynolds] has failed to establish damages to a legal certainty more than $25,000.

## II. JURISDICTION

### A. STANDARD OF REVIEW

Reynolds argues that the circuit court erred by finding that it lacked jurisdiction over her ELCRA claim. We review de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Summary disposition is properly granted under MCR 2.116(C)(4) when "[t]he court lacks jurisdiction of the subject matter." Whether a court has subject matter jurisdiction presents a question of law that this Court reviews de novo. *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016). We review de novo issues of statutory interpretation relating to jurisdiction. *AFSCME Council 25 v State Employees' Ret Sys*, 294 Mich App 1, 6; 818 NW2d 337 (2011).

### B. ANALYSIS

"A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint. If it is apparent from the allegations that the matter alleged is within the class of cases with regard to which the court has the power to act, then subject-matter jurisdiction exists." *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002) (quotation marks and citation omitted). Here, Reynolds claims that defendants violated ELCRA, and she alleged that the amount in controversy exceeded $75,000.

Defendants argue that Reynolds's claim must be dismissed under MCL 600.8301(1), which provides that "[t]he district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000." Assuming *arguendo* that the amount in controversy does not exceed $25,000, this provision plainly vests jurisdiction over Reynolds's claim in the district court. However, § 801 of ELCRA specifically grants the circuit court jurisdiction over civil rights claims brought under ELCRA:

> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business. [MCL 37.2801(2).][2]

---

[2] Defendants argue that the use of the word "may" in MCL 37.2801(2) means that a circuit court may, under certain circumstances, have jurisdiction over ELCRA claims, but, under other circumstances, another court, such as a district court, may have jurisdiction. We disagree. The statute provides that an action under ELCRA may be brought in the circuit court in one of three counties: (1) where the alleged violation occurred, (2) where the person who committed the

-3-

Because § 801 of ELCRA and § 8301(1) of the Revised Judicature Act,[3] each appear to provide jurisdiction to a different court, we must resolve the apparent jurisdictional conflict.

Where a statutory jurisdictional conflict exists, we apply the following rule:

"Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act, as the Legislature is not to be presumed to have intended a conflict." [*Driver v Hanley*, 207 Mich App 13, 17; 523 NW2d 815 (1994), quoting *Baxter v Gates Rubber Co*, 171 Mich App 588, 590; 431 NW2d 81 (1988).]

It is well established that MCL 600.8301(1) "is general in its application." *Driver*, 207 Mich App at 17. Further, in *Baxter*, this Court concluded that § 801 of ELCRA was a specific grant of jurisdiction. *Baxter*, 171 Mich App at 591-592. The *Baxter* Court explained:

[Section] 801 of the Civil Rights Act vests the circuit court with jurisdiction of a specific subject matter, a private action for discrimination prohibited by the Civil Rights Act. This Court has previously held that § 801 is more than a venue provision, conferring substantive jurisdiction to the exclusion of other forums. The prohibitions against discrimination and the promotion of civil rights rise to the level of a clearly established public policy of this state. We discern a legislative judgment that the policies underlying the civil rights legislation are of such importance that resort to circuit court is mandated in every case, even when potential damages are less than $10,000.[4] A plaintiff seeking vindication of these policies through a private cause of action should have access to all of the procedural advantages and protections available only in the circuit court. Because § 801 is a specific grant of jurisdiction, reflecting substantive policy concerns, we

---

alleged violation resides, or (3) where the person who committed the alleged violation has his or her principal place of business. MCL 37.2801(2). Nothing in the statute provides that a claim under ELCRA may sometimes be brought in district court. See *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011) (stating that nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself). Thus, given that the word "may" plainly refers to the choice of *counties*, not courts, and given that the statute includes no provision providing for district-court jurisdiction, we find defendants interpretation of the statutory language unpersuasive and contrary to the plain meaning of the statute.

[3] MCL 600.101 *et seq.*

[4] The jurisdictional limit of was raised from $10,000 to $25,000 in 1996; the change took effect in 1998. See 1996 PA 388.

-4-

hold that it takes precedence over the more general jurisdictional provision of MCL 600.8301(1). [*Id.* (citations omitted; footnote added).]

Although *Baxter* is not binding because it was decided before November 1, 1990, see MCR 7.215(J)(1), we nevertheless finding the reasoning persuasive, see *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2013).[5]  Thus, we reaffirm that § 801 of ELCRA takes precedence over the general jurisdictional grant set forth in MCL 600.8301, and we reaffirm that ELCRA provides for exclusive circuit court jurisdiction, regardless of the amount in controversy.[6]

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  Reynolds may tax costs as the prevailing party.  See MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Patrick M. Meter

---

[5] In doing so, we necessarily reject defendants' suggestion that the 1996 amendment of MCL 600.8301(1), which raised the jurisdictional limit form $10,000 to $25,000, reflected a legislative intent to essentially reject the reasoning applied in *Baxter*.  Although we agree with defendants that the 1996 amendment reflected a legislative intent to decrease the amount of civil cases heard in circuit court, that does not change the nature of MCL 600.8301(1) as a general jurisdictional statute, nor does it change the nature of MCL 37.2801(2) as a specific jurisdictional statute.

Defendants also rely on documentary evidence showing that the Oakland County Circuit Court generates over 10,000 new cases per year.  However, the number of cases filed in circuit court, no matter how voluminous, does not negate the circuit court's exclusive jurisdiction over civil rights cases brought under § 801 of ELCRA.

[6] Given our resolution of this issue, we need not address the alternative arguments in support of finding jurisdiction raised in Reynolds's brief on appeal.  However, we note that Reynolds's complaint asserted that she suffered "substantial economic and noneconomic damages." Damages for emotional distress are a form of noneconomic damages, see *Hannay v Dep't of Transp*, 497 Mich 45, 76; 860 NW2d 67 (2014), which are recoverable under ELCRA, see *Hyde v University of Mich Regents*, 226 Mich App 511, 522-524; 575 NW2d 36 (1997).